Frances C. McANDREW, Executrix of the Estate of Anthony J. McAndrew, Plaintiff,

v.

James J. BURNETT, M.D., Defendant.

Civ. A. No. 74–30.

United States District Court, M. D. Pennsylvania.

April 20, 1974.

John R. Lenahan, Lenahan, Dempsey & McDonald, Scranton, Pa., for plaintiff.

Lewis S. Kunkel, Jr., Fred Speaker, Harrisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

Plaintiff, a citizen of Pennsylvania and executrix of the estate of her husband, filed this medical malpractice action against James J. Burnett, M.D., a citizen of New York, to recover for the wrongful death of her husband and to recover for damages incurred by decedent's estate as a result of his death. Jurisdiction is based upon diversity of citizenship. Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction and for failure to state a claim within the applicable statute of limitations.

The complaint alleges that while Plaintiff and her decedent were citizens of New York, the Defendant, a New York licensed physician, operated upon decedent on March 9, 1970 and negligently left a hemostat within the patient's abdominal cavity. The operation was performed in a New York hospital. The complaint further alleges that following surgery, Defendant continued to treat decedent and, despite his complaints of pain and discomfort, Defendant negligently failed to take X-rays of decedent's abdominal area. Plaintiff alleges that decedent suffered much expense, pain, and ultimately death as a result of this negligence.

Uncontested portions of the complaint and uncontroverted affidavits of both parties reveal these additional facts: Plaintiff and decedent moved to and became citizens of Pennsylvania in November, 1972, the existence of the hemostat in decedent's body not yet having been discovered. Thereafter, decedent came under the care of Dr. Thomas J. McDonnell, Dunmore, Pennsylvania. Dr. McDonnell took X-rays of decedent and discovered the hemostat in his body. The Defendant, Dr. Burnett, was informed of this finding, and he had at least one telephone conversation with Plaintiff about it. In late January or early February, 1973, Dr. Burnett travelled to Scranton to view the X-rays, and also visited Plaintiff and decedent

at their residence to discuss the case. Following this meeting, there was no further contact between the parties. On March 12, 1973, decedent underwent surgery, apparently by Dr. McDonnell, for the removal of the hemostat at a Pennsylvania hospital. Decedent died on June 12, 1973. Dr. Burnett is not licensed to practice in Pennsylvania. He treats all of his patients in New York, and has no Pennsylvania residents referred to him as patients. Process was served upon Dr. Burnett in New York pursuant to Pennsylvania's Long-Arm Statute 1972, Nov. 15, P.L. ——, No. 271, § 8301 et seq., 42 P.S. § 8301 et seq.

F.R.Civ.P. 4(e) provides that service may be made upon an out-of-state party pursuant to a statute of the state in which the district court sits. Therefore, the issue in this case is whether Defendant was properly served under the Pennsylvania Long-Arm Statute. Plaintiff cites three sections of the statute which she contends sanction the service upon Dr. Burnett. 42 P.S. § 8304, provides for service upon non-resident individuals who "shall have done any business in this Commonwealth on or after August 30, 1970." 42 P.S. § 8303, provides for service upon non-residents "who shall have committed a tortious act within this Commonwealth on or after August 30, 1970." 42 P.S. § 8305 provides for service upon non-residents who "shall have caused any harm within this Commonwealth on or after August 30, 1970." The Pennsylvania Long-Arm Statute has not yet been interpreted by the Pennsylvania courts, but it is reasonable to assume that the statute will be interpreted so as to extend the jurisdiction of Pennsylvania courts over non-residents to the fullest extent possible consistent with due process under the Constitution of the United States. See 42 P.S. § 8309(b).

■■ In my view, personal jurisdiction over Dr. Burnett is consistent neither with the Pennsylvania Long-Arm Statute, nor with due process. Dr. Burnett can in no way be considered as having done any business in Pennsylvania.

His only business-related contacts with Pennsylvania were the January, 1973 telephone conversation between Plaintiff and Dr. Burnett concerning the X-rays of the decedent, and the February, 1973 visit of Dr. Burnett to the Scranton office of Dr. McDonnell and to Plaintiff's residence to review the X-rays. There is no indication that the decedent was billed for this visit by Dr. Burnett. Such minimal business contacts do not constitute "doing business" in Pennsylvania, even under the liberal definition of that term in the Pennsylvania statute. 42 P.S. § 8309. The emphasis of the statute is upon doing something in Pennsylvania for the purpose of making a profit. 42 P.S. § 8309(a)(2). A contrary interpretation of the statute would be unconstitutional, for due process requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In Scheidt v. Young, 389 F.2d 58 (3d Cir. 1968), the Third Circuit Court of Appeals was called upon to determine whether Pennsylvania residents operating a vacation lodge in Pennsylvania at which the New Jersey plaintiff was injured were constitutionally subject to extraterritorial service under a New Jersey statute which extended such service to the full extent permitted by due process. The lodge was advertised in a New York newspaper circulated and read by the Plaintiff in New Jersey; the Plaintiff telephoned the lodge from New Jersey and made reservations, and later telegraphed a deposit to the lodge from New Jersey; after the accident, representatives of the Defendants and their insurer called on the Plaintiff in New Jersey regarding the accident. The Court found that New Jersey "did not have the necessary 'minimum contacts' to sustain jurisdiction over the person and service of process required by due process . . . ." 389 F.2d at 60. Similarly, in the case at bar, the telephone call and Dr. Burnett's visit to

Pennsylvania to review the basis for the allegation that he had left a hemostat in the decedent's body is not the kind of act which would support personal jurisdiction over the Defendant in Pennsylvania.

 · I turn now to the question of whether Dr. Burnett's alleged tortious conduct can give rise to jurisdiction in Pennsylvania. The alleged tort of negligently leaving a hemostat in decedent's body was committed in New York, by a New York doctor, upon a New York resident. Plaintiff also alleges that Defendant was negligent in not subsequently taking X-rays of the decedent to determine the cause of his discomfort while he was in the care of Defendant. The doctor-patient relationship between Dr. Burnett and decedent existed only in New York, and terminated when Plaintiff and decedent moved to Pennsylvania in November, 1972. The actions and omissions of Defendant do not constitute "tortious act[s] within this Commonwealth," under 42 P.S. § 8303. Nor can Defendant be considered as having caused "any harm" in Pennsylvania within the meaning of 42 P.S. § 8305. The harm to decedent was done in New York when the hemostat was allegedly left in his body. That a continuing injury was at some point suffered by the decedent in Pennsylvania, and that the existence of· the hemostat in his body was discovered here, does not in my view constitute the sort of harm which may serve as a basis for extraterritorial service under 42 P.S. § 8305. Applying constitutional principles of due process, the Ninth Circuit reached the same result in a case with facts similar to those in the case at bar. Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972). In *Wright*, the Plaintiff, a South Dakota resident, was taking drugs prescribed to her by a South Dakota physician. Plaintiff later moved to Idaho, and upon request, the South Dakota physician sent her copies of the original prescription. Plaintiff obtained the ·drugs in Idaho pursuant to the prescription. Alleging that she was eventually injured by the use of the drugs, Plaintiff filed suit in Idaho and served the physician under Idaho's Long-Arm Statute. Reviewing International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct.` 154, 90 L.Ed. 95 (1945), and its progeny, the Court found that no tort was committed within Idaho which could constitutionally confer jurisdiction under that state's long-arm statute. The following observations of the Court are equally applicable to the case *sub judice*.

"In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need . . . .. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it."

459 F.2d at 289–290.

Dr. Burnett's motion to dismiss for lack of personal jurisdiction must be granted. It is unnecessary to consider his statute of limitations defense. An order quashing service and dismissing the complaint without prejudice will be entered.