**Orville E. STIFEL, II, Plaintiff,**

v.

**Ambrose H. LINDHORST et al., Defendants.**

**Civ. A. No. 75–179.**

United States District Court, M. D. Pennsylvania.

May 8, 1975.

---

Orville E. Stifel, II, pro se.

James K. Thomas, II, Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

This case presents a peculiar set of facts whose origin is the classic lovers' triangle which resulted in the bombing death of one of the principals.

For several years, Orville Stifel, an Ohio University student, had been involved in a "tempestuous" on again, off again romance with one Cheryl Jones. Late in 1967 Miss Jones signaled the end of her relationship with Stifel by becoming engaged to Daniel Ronec, a graduate student at the University. Ultimately, in July 1968, Daniel Ronec was killed at his Lorain, Ohio, home when a package, delivered through the mails, exploded in his hands.

Orville Stifel was tried and convicted in the United States District Court for the Northern District of Ohio for violating 18 U.S.C. § 1716. He was sentenced to life in prison. The affirmance of that conviction is reported at 433 F.2d 431 (6th Cir. 1970). The plaintiff is presently an inmate at the United States Penitentiary at Lewisburg, within this district.

In the instant lawsuit the plaintiff contends that his original defense counsel, William and Robert Hopkins,[1] of Cincinnati, conspired to sabotage his trial by turning over to an F.B.I. agent (identified as Clifford Anderson), confidential defense information prior to trial. Stifel claims that William Hopkins' former secretary, Virginia H. Dahl, witnessed the transaction and is prepared to so testify.

Following discovery of this alleged duplicity, the plaintiff initiated a civil suit against the Hopkins in the U.S. District Court for the Southern District of Ohio. Attorneys Ambrose Lindhorst and James O'Connell represented the Hopkins in the suit which was later voluntarily withdrawn without prejudice. A second action was initiated in the Court of Common Pleas of Cuyahoga County (Cleveland), within the Northern District of Ohio.[2] It was during the pendency of the civil suit in the Southern District of Ohio that Stifel alleges Lindhorst and O'Connell joined the Hopkins

---

1. It appears that Robert Hopkins is a defendant largely because of his partnership with Stifel's actual trial and appellate counsel William F. Hopkins.

2. The pendency of the state action was never raised in support of the defendants' attempt to dismiss the instant suit. Further, it appears nowhere that the plaintiff ever petitioned for a writ of habeas corpus (or a new trial) based on the claimed misconduct of defense counsel.

in the conspiracy which is the subject of this suit.

The plaintiff contends that Lindhorst and O'Connell conspired with the Hopkins to maliciously fabricate delays and expensive motions to exhaust the plaintiff's funds. More fundamental, however, is Stifel's claim that William Hopkins offered Mrs. Dahl a bribe to remain silent, and when that failed threatened and harassed her for cooperating with Stifel's civil suit. It is unclear what role, if any, Stifel believes Lindhorst and O'Connell played in the alleged bribe and threats.

The amended complaint[3] contends that the defendants entered into a conspiracy in violation of 42 U.S.C. § 1985(2). The jurisdictional statute for § 1985 is 28 U.S.C. § 1343. Implicit in the complaint is a claim of jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. It seems fair to say that the essence of the complaint alleges a conspiracy that began with plaintiff's original criminal trial and continues to date.

The instant defendants have moved to dismiss the complaint on several grounds. Having concluded that the first reason for dismissal, lack of personal jurisdiction, is well taken, the remaining grounds will not be discussed.

Rule 4(e), Fed.R.Civ.P. (as amended, 1966) provides for service of process in accord with the state service of process statute where a federal jurisdictional statute is silent. Neither § 1332 nor § 1343 provide for Nationwide service of process. Gallaher v. Chemical Leaman Tank Lines, Inc., 367 F.Supp. 1063 (E.D.Tenn.1973). Pennsylvania's recently enacted long arm statute, 42 P.S. § 8301

et seq., controls the service or process in the instant case. Based on the plaintiff's brief, it is obvious that he relies largely[4] on § 8305 which provides, in part:

> "Any nonresident of this Commonwealth who, acting outside of this Commonwealth . . . shall have, caused any harm within this Commonwealth on or after August 30, 1970, shall be subject to service of process. . . ."

The procedure allows for substitute service on the Department of State and by registered mail on the defendant. We note that by far the greatest injury suffered by the plaintiff arose *prior* to the effective date of the statute. However, he has made claims of conspiratorial conduct following August 30, 1970.[5]

Taking as true all allegations made by the plaintiff in his complaint and subsequent pleadings, the "harm" caused to him "within this Commonwealth" appears to be as follows:

1) Unmeritorious motions filed in Ohio courts which caused the plaintiff, while in Pennsylvania, to expend time and money;

2) Threats against Mrs. Dahl which were communicated (apparently by Mrs. Dahl) to the plaintiff in Pennsylvania;

3) General mental anguish caused by the frustration of dealing with bad faith attempts to circumvent the plaintiff's civil suits in Ohio.

Two of the three cases relied upon by the plaintiff do not involve § 8305, and the third predates the statute.[6] Likewise, the case primarily relied upon by

---

3. The original complaint was impounded by court order for containing a prayer for a specified, unliquidated sum of money, in violation of local rule 101.06.

4. Although § 8303 is offered as a basis for personal jurisdiction, the argument has no merit. That section expressly requires that the defendants have committed a tortious act within the Commonwealth. Nothing in any of the pleadings in any way constitutes an

alleged tort to have been committed within the Commonwealth of Pennsylvania.

5. There is some authority that the new long-arm statute covers causes of action which arose before its enactment. Proctor & Schwartz v. Cleveland Lumber Co., 228 Pa.Super. 12, 15 n. 1, 323 A.2d 11 (1974).

6. Gorso v. Bell, 476 F.2d 1216, 1221 (3d Cir. 1973); Keene v. Multicore, 379 F.Supp. 1279, 1283 (E.D.Pa.1974); Wilk v. Ensign, 421 Pa. 161, 164, 218 A.2d 778 (1966).

the defendants did not involve § 8305. Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa.Super. 12, 323 A.2d 11 (1974). The case is, however, a thorough analysis of the constitutional ramifications of the long-arm statute in general.

This court finds persuasive the case of McAndrew v. Burnett, 374 F.Supp. 460 (M.D.Pa.1974) (Muir, J.). The McAndrew case specifically involved § 8305 and the permissible limits of harm caused within Pennsylvania by a person acting outside the state. The defendant was a New York surgeon who operated on the plaintiff in New York. Thereafter, the plaintiff moved to Pennsylvania, only to discover discomforting side effects from the operation. It eventuated that the doctor had failed to remove a hemostat from the patient. The doctor and patient consulted several times including once during a personal visit to Pennsylvania by the defendant doctor. The patient later died as an apparent result of the doctor's negligence.

The "harm" claimed was the considerable pain and suffering which occurred within Pennsylvania as a result of the New York surgery. Judge Muir took the position that the harm occurred within New York, not Pennsylvania.

In McAndrew the court relied on Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972). The language in Wright deserves repetition here:

"In the case of personal services focus must be made on the place where the services are rendered . . . . It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with public interest in having services of this sort generally available. . . .

\* \* \* \* \* \*

"[T]he nature of the contacts is normally grounded outside of any relationship with the forum state. Unlike a case involving voluntary, interstate economic activity, for example, which is directed at various states in order to benefit from effects sought in those states [citations omitted], here the residence of a recipient in the forum state is irrelevant and incidental to the benefits provided by the defendant in his location . . . . Nor are . . . services comparable to acts performed by a nonresident for the very purpose of having their consequences felt in the forum state. . . . " 459 F.2d, at 289–90.

■ The instant plaintiff is erroneously attempting to style his claim as the sort of "portable tort" rejected in Wright and McAndrew. The injury caused to the plaintiff is simply an indirect residual of out-of-state activity. The most serious effect of defendants' conduct, if proved, was the plaintiff's conviction in Ohio, followed by a conspiracy to cover up their conduct, also continuing in Ohio. As in McAndrew, the plaintiff carried his injury with him to Pennsylvania.

■ This court views § 8305 as requiring the *cause* of the harm, not merely its *effect,* to occur within Pennsylvania though the actor is outside the state.[7] The plain language of the statute requires as much.

To hold otherwise would permit substitute service solely by reason of the plaintiff's residence within the Commonwealth.

The court therefore concludes, regardless of subject matter jurisdiction considerations, that we have no personal jurisdiction over the defendants. Consequently, the motion to dismiss will be granted.

An appropriate order will be entered.

---

7. For example, a libelous letter written outside the Commonwealth which is mailed into the Commonwealth could satisfy both § 8305 and the Due Process Clause.