**B. J. McADAMS, INCORPORATED**

v.

**Winston M. BOGGS et al.**

**Civ. A. No. 75–3054.**

United States District Court,
E. D. Pennsylvania.

Feb. 14, 1977.

Peter Hearn, Patricia L. Freeland, Philadelphia, Pa., for plaintiff.

Tom P. Monteverde, Philadelphia, Pa., for all defendants except Boggs.

Michael J. Rotko, Philadelphia, Pa., for defendant Boggs.

## OPINION

LUONGO, District Judge.

This is an action for breach of a fiduciary duty by a corporate officer and employee and for diversion of a corporate opportunity. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a)(1). The action is before me on the following motions: (a) by twelve of the fourteen defendants, to quash the return of service of summons and dismiss the action for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2); (b) by seven of the defendants to dismiss because venue is not proper, Fed.R.Civ.P. 12(b)(3); (c) by thirteen of the defendants, to transfer the action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a); and (d) by one

defendant, to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The motions may be heard before trial. *See* Fed.R.Civ.P. 12(d). The record consists of affidavits, depositions, and other documents. *See generally* Fed.R.Civ.P. 43(e).

Plaintiff, B. J. McAdams, Incorporated, is an Arkansas corporation engaged in interstate trucking. The primary defendant is Winston M. Boggs, an employee of plaintiff in 1974 and 1975 whose duties included the solicitation of new business and acquisition of new operating rights for plaintiff. In 1974, while in Philadelphia on business for plaintiff, Boggs met W. W. Hughes and, acting on plaintiff's behalf, began inquiries regarding the purchase from Hughes of an Interstate Commerce Commission (ICC) certificate of public convenience and necessity authorizing the hauling of frozen foods in twenty-six Eastern states. Plaintiff subsequently undertook extensive negotiations with Hughes for purchase of the certificate.

Hughes died in February, 1975, and shortly thereafter Boggs undertook negotiations with the Hughes estate to purchase the certificate for himself. Most of these negotiations were conducted by letter or by telephone while Boggs was at plaintiff's offices in North Little Rock, Arkansas. Boggs and a representative of the estate agreed upon a purchase price in the spring of 1975.

To facilitate transfer of the certificate, the Hughes estate formed Hughes Refrigerated Express, Inc., a Pennsylvania corporation, and, upon ICC approval, transferred the certificate to the corporation. This allowed subsequent transfer of the certificate to be made through sale of the corporation's stock, a transaction which, unlike sale of the certificate itself, did not require ICC approval.

To obtain the capital needed for the purchase, Boggs telephoned David E. Green, a Haines City, Florida, physician, and offered him an opportunity to invest in the new Hughes corporation. Green and some of his friends and associates—defendants Ralph T. Stalnaker, John W. Moore, Edward M. Schlein, Edward F. Jukes, J. C. Long, Hal Davis, Doris Beasley, R. V. Phillips, L. B. Carnes, and Robert E. Taylor [1] (hereinafter collectively referred to as the investors)—agreed to join Boggs in purchasing the Hughes stock. All of the investors were and still are Florida residents. Because some of the investors did not have sufficient funds to purchase the stock, the group borrowed money from Exchange Bank of Central Florida, which took a lien on the ICC certificate and on the Hughes stock as security.

An attorney for the investors drafted an agreement of sale and a "trust agreement" whereby Boggs was to be appointed by the investors as "Trustee or agent to represent [them] in the acquisition of the [Hughes stock]." On June 24, 1975, while in the Philadelphia area on business for plaintiff, Boggs executed the trust agreement and the agreement of sale and made a down payment; he signed the agreement of sale in his capacity as "trustee." The trust agreement was signed by the investors in Florida on July 3, 1975.

The closing took place in Cornwells Heights, Pennsylvania, a Philadelphia suburb, on August 25, 1975, following ICC approval of transfer of the certificate to the Hughes corporation. Boggs signed the closing documents for the investors and paid the balance of the purchase price, using the funds borrowed from Exchange Bank. The funds had been transferred by wire to Philadelphia from Exchange Bank's offices in Haines City, Florida.

Plaintiff instituted this action on October 1, 1975, naming as defendants Boggs, the eleven investors, Exchange Bank of Central Florida, and Hughes Refrigerated Express, Inc. Alleging breach of a fiduciary duty and diversion of a corporate opportunity, plaintiff contends that the stock is held by Boggs and the investors in constructive trust, demands transfer of the stock to it upon payment by it of the purchase price, demands an accounting and payment to it

---

1. Taylor later sold his stock in the Hughes corporation to defendant J. C. Long.

of all profits generated from use of the certificate, and asks for damages. Plaintiff also seeks to void the loan agreement with Exchange Bank.

Defendants' motions will be considered separately.

## I. MOTION TO QUASH SERVICE AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The eleven investors and Exchange Bank of Central Florida move to quash the return of service of summons and to dismiss the action for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

Because there is no federal personal jurisdiction statute, personal jurisdiction is challenged by an attack on service of process. *See Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 548 (4th Cir. 1965). Pursuant to Federal Rule 4(d)(7),[2] plaintiff served these defendants in accordance with the provisions of the Pennsylvania Long-Arm Act of 1972, 42 Pa.C.S.A. §§ 8301 *et seq.* (Supp.1976–1977, App.),[3] by service upon the Secretary of the Commonwealth.[4] Defendants contend that the Long-Arm Act does not apply to them, and that, in the event that it does, service pursuant to the Act deprives them of due process of law.

All of the investors are residents of Florida. None of them participated personally in the stock purchase; instead they appointed Boggs as their "trustee and agent" to complete negotiations and consummate the transaction. Because of the agency relationship, the acts of Boggs are attributable to the investors, and therefore jurisdiction over the investors depends upon the sufficiency of Boggs' conduct.

Exchange Bank is a Florida banking institution. Its only connection with this action is through the loan which it made to the investors. It does not otherwise conduct business in Pennsylvania.

### A. THE LONG–ARM ACT

The Long-Arm Act divides nonresidents into two categories for purposes of extraterritorial service. Sections 8301–02 deal with nonresident corporations such as Exchange Bank. Sections 8303–05 deal with nonresidents "acting individually," thus excluding corporations. *See Sipe v. Local 191, Carpenters and Joiners*, 393 F.Supp. 865, 873–74 (M.D.Pa.1975); *General Heat and Power Co. v. Diversified Mortgage Investors*, 65 F.R.D. 697 (M.D.Pa.1975).

The only nonresident corporation involved in this action is Exchange Bank, and plaintiff purports to reach it pursuant to § 8302(a), which provides for service of process through the Department of State for "[a]ny foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State". Exchange Bank has not procured a certificate of authority. Although "doing business" is defined in § 8309(a) of the Act, the scope of that provision is broadened by § 8309(b), which provides:

> "In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations

---

**2.** After specifying how service must be made, Rule 4(d) provides:

> "(7) Upon [an individual or corporate defendant], it is also sufficient if the summons and complaint are served . . . in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

**3.** *Repealed*, Act of July 9, 1976, P.L. ——, No. 142, § 1 (Pa.Leg.Serv.Pamphlet No. 4, 1976) (effective upon separate enactment of legislation pursuant to section 29(4) thereof). In enacting a new complete codification of Title 42

of the Pennsylvania Consolidated Statutes, the Pennsylvania General Assembly has replaced the Long-Arm Act of 1972 with a modified form of the Uniform Interstate and International Procedure Act and related provisions. *Id.* § 2 (enacting 42 Pa.C.S. §§ 5301 *et seq.*). Since the 1976 Act is not yet effective, this action is controlled by the 1972 Act.

**4.** The Act directs that service be made upon the Pennsylvania Department of State. *See* 42 Pa.C.S.A. §§ 8307–08. The Secretary of the Commonwealth is the "head" of the Department of State. Administrative Code of 1929, § 206, 71 P.S. § 66.

and the powers exercised by them to the fullest extent allowed under the Constitution of the United States."

Jurisdiction over the Bank, therefore, is solely a question of due process and will be discussed hereinafter under that heading.

■■■ Application of the statute is more restricted with regard to the individual investors. Jurisdiction over them must be obtained pursuant to either § 8303, § 8304, or § 8305, and plaintiff contends that all three of these sections are applicable. I agree that service is proper either under § 8303 or § 8305.

*Section 8303*

Section 8303 provides:

"Any nonresident of this Commonwealth who, acting individually, under or through a fictitious business name, or through an agent, servant or employee, shall have committed a tortious act within this Commonwealth . . . shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual."

The issue under this section is whether the investors committed a "tortious act" within Pennsylvania.[5]

■ Breach of a fiduciary duty and diversion of a corporate opportunity may be considered tortious. *See Barnes & Tucker Co. v. Bird Coal Co.*, 32 Pa.D. & C. 535, 539–40 (C.P.Phila.1938), *aff'd*, 334 Pa. 324, 5 A.2d 146 (1939). Boggs consummated the stock purchase transaction in Cornwells Heights, Pennsylvania, and in doing so committed the allegedly "tortious act within this Commonwealth" which plaintiff alleges caused injury to it. Since Boggs performed these acts within Pennsylvania as agent for the investors under the trust agreement, the investors have thus, acting through an agent, committed a tortious act within Pennsylvania and are subject to service under § 8303.

*Section 8305*

■ Section 8305 provides:

"Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth . . . shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct."

5. Obviously, despite the wording of the section, actual proof of tortious conduct cannot be a prerequisite to the applicability of § 8303, since determination of whether a tort has been committed is the aim of subjecting defendants to the section's provisions. All that is required is "commission of an act tortious if proved as alleged." Comment, The Pennsylvania Long-Arm: An Analytical Justification, 17 Vill.L.Rev. 73, 85 n. 75 (1971) (discussing nearly identical provision in Long-Arm Act of 1970).

The "tortious act" issue must be distinguished from the question of whether the investors committed a *tort* within Pennsylvania. The locus of a tort is generally regarded as the place where injury is inflicted, including, in the case of a corporation, the place where a loss of profits or income is registered. *See, e. g., Action Industries Inc. v. Wiedeman*, 236 Pa.Super. 447, 460–61, 346 A.2d 798, 805 (1975); *Gorso v. Bell Equipment Corp.*, 476 F.2d 1216, 1221 (3d Cir. 1973); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1294–95, 1296

(E.D.Pa.1973). Although this is a choice-of-laws concept, it is no longer controlling for such purposes in Pennsylvania. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). Similarly, the locus of a tort is not the controlling principle under § 8303. The essential consideration under the section is whether tortious injury was inflicted through an *act* committed within Pennsylvania, even though the injury was manifested elsewhere. *See* Comment, *supra*, at 85–89; *cf. Rufo v. Bastian-Blessing Co.*, 405 Pa. 12, 18–23, 173 A.2d 123 (1961) (interpreting 1933 predecessor to § 8303). *Cf. also* Restatement (Second) of Conflict of Laws § 36(1) and Comment *b* (1971). As discussed *infra*, commission of a *tort* within Pennsylvania falls within the broad provisions of § 8305 of the Long-Arm Act. In some situations, commission of a tort may also constitute an element of "doing business" under § 8304. *See Aamco, supra*, at 1294–95; *cf. Gorso, supra.*

The section requires that (1) the nonresident have acted outside of Pennsylvania, (2) his action have caused "any harm" within Pennsylvania, and (3) the cause of action have arisen out of the conduct causing the harm. The harm need not be tortious, and either personal or financial injury is sufficient. *Action Industries, Inc. v. Wiedeman*, 236 Pa.Super. 447, 453 n. 6, 346 A.2d 798, 801 n. 6 (1975); *Zimmerman v. Zimmerman*, 395 F.Supp. 719, 723 (E.D.Pa.1975); *Rosen v. Solomon*, 374 F.Supp. 915, 919 (E.D.Pa. 1974), *aff'd mem.*, 523 F.2d 1051 (3d Cir. 1975).

While in Florida, the investors sent Boggs into Pennsylvania to close the stock purchase deal. The first requirement therefore is met.

 The parties' main disagreement as to this section concerns the second requirement that harm must have occurred within Pennsylvania.[6] The investors contend that the only harm suffered by plaintiff is economic loss resulting from plaintiff's failure to acquire Hughes and the ICC certificate, and they assert that this loss will only be registered in Arkansas, the state of plaintiff's incorporation and its principal place of business. *See, e. g., Action Industries, Inc., supra*, 236 Pa.Super. at 453 n. 6, 346 A.2d at 801 n. 6; *Miller v. American Telephone &*

*Telegraph Co.*, 394 F.Supp. 58, 63 n. 4 (E.D. Pa.1975), *aff'd mem.*, 530 F.2d 964 (3d Cir. 1976). *See also Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1295 (E.D.Pa.1973). Plaintiff contends, however, that some of the harm occurred in Pennsylvania, since this is where the certificate was allegedly wrongfully diverted and since Pennsylvania is a major source of the business authorized under the diverted certificate.

The statute speaks in broad and expansive terms of "any harm" being caused within Pennsylvania. That choice of language by the legislature indicates that the clause should not be read narrowly or technically. Plaintiff allegedly lost business opportunities in Pennsylvania as a result of acts performed by defendants within Pennsylvania. Although plaintiff's ultimate financial loss may have been registered in Arkansas, it appears to me that part of that harm was suffered within Pennsylvania at the site of the alleged diversion. A corporation doing business on a multistate scale may suffer harm to its business in various states. A technical rule of "place of the tort" which locates such losses at the corporation's state of incorporation for choice-of-law purposes [7] should not be used to narrow the "any harm" language of the statute.[8] I conclude that plaintiff suffered some harm

---

**6.** It has been held that § 8305 requires "the *cause* of the harm, not merely its *effect*, to occur within Pennsylvania though the actor is outside the state." *Stifel v. Lindhorst*, 393 F.Supp. 1085, 1088 (M.D.Pa.1975) (emphasis in original; footnote, giving example of libelous letter mailed into Pennsylvania from outside the state, omitted), *aff'd mem.*, 529 F.2d 512 (3d Cir. 1975), *cert. denied*, 425 U.S. 962, 96 S.Ct. 1746, 48 L.Ed.2d 207 (1976). *See also McAndrew v. Burnett*, 374 F.Supp. 460, 463 (M.D.Pa.1974). This holding has been criticized. *See* Comment, Long-Arm Wrestling with Pennsylvania's Jurisdiction over Nonresident Individuals: The Reach of Section 8305, 21 Vill.L.Rev. 410, 427–28 (1976). The investors, acting in Florida, sent Boggs into Pennsylvania, where Boggs consummated the stock purchase transaction. Boggs' action within Pennsylvania actually caused the harm, and therefore even the stringent requirements of *Stifel* are met.

**7.** This rule is an application of the general principle that the "place of the tort" is the place where injury is inflicted. *See* note 5 *supra*. The Second Restatement of Conflicts has abandoned this entire principle, partly because in the case of many torts "there is often no one clearly demonstrable place of injury and at times injury will have occurred in two or more states." 1 Restatement (Second) of Conflict of Laws, Introductory Note to Chapter 7, Topic 1, at p. 413. Pennsylvania has followed the Restatement in abandoning use of place of the injury to determine choice of laws. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

**8.** The Uniform Interstate and International Procedure Act, 42 Pa.C.S.A. § 5322(a)(3), (4), as recently adopted by Pennsylvania in a modified form (*see* note 3 *supra*), uses the phrase "Causing harm or tortious injury," thereby further indicating that the General Assembly does not consider the two concepts identical.

("any harm") in Pennsylvania within the meaning of § 8305.

 Harm was also caused to the Hughes corporation, which was subject to an allegedly unlawful transfer of its ownership from Pennsylvania to Florida citizens and a host of problems resulting from that transfer, including this lawsuit against the corporation. The statute does not state that the only recognizable harm is that which has occurred to plaintiff. Any harm caused by conduct giving rise to plaintiff's cause of action may be considered.[9] Since Hughes is a Pennsylvania corporation, and since at the time of the stock transfer Hughes' ownership and management was in Pennsylvania, harm to Hughes occurred within this state. For these reasons, I hold that the second requirement of § 8305 has been met.

The third requirement—that the cause of action arise out of the conduct causing the harm—has also been satisfied. The conduct, of course, was Boggs' consummation of the stock purchase, thereby causing harm to both plaintiff and Hughes. Plaintiff is here seeking redress for the harm caused to it.

All of the requirements of § 8305 having been satisfied, service was proper under that section.

*Section 8304*

 I have greater difficulty with plaintiff's contention that service is also proper under § 8304. Since I have already held that service was authorized by § 8303 or § 8305, I need not resolve the issue, although I offer the following observations.

Section 8304 provides:

**9.** There is no reason to interpret the statute more narrowly. The purpose of the Act is to delineate what contacts with Pennsylvania are sufficient to subject a nonresident to service here. The focus is on contacts with the state, not with the plaintiff. *Cf.* 42 Pa.C.S.A. § 8304 (requiring business within Pennsylvania rather than business with plaintiff). The legislature has limited § 8305 to require the harm to arise from conduct giving rise to plaintiff's cause of action. I shall not impose a further restriction.

"Any nonresident of this Commonwealth who, acting individually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth . . . shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual, if and only if at the time the cause of action accrued or the harm or financial loss occurred, the nonresident . . . shall have been doing any business within this Commonwealth as heretofore provided."

Insofar as is here relevant, the Act provides that "doing business" consists of—

"(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts."

42 Pa.C.S.A. § 8309(a). The only "business" done by the investors in Pennsylvania at the time this cause of action accrued or the harm or financial loss occurred was the purchase of the Hughes stock.[10] The question is whether this transaction comes within the meaning of § 8309(a)(1) or (2).

Most of the negotiations which led to the purchase of the Hughes stock took place before the investors became involved. Subsequent to the investors' involvement, Boggs attended meetings in Pennsylvania

**10.** Of course, in considering this issue, the focus is on business done by the investors in their individual capacity. Even if the harm or financial loss is considered to have occurred after the acquisition of the Hughes stock, therefore, the business done by the Hughes corporation in Pennsylvania is irrelevant; it may not be imputed to the investors. *See Feld v. Tele-View, Inc.,* 422 F.Supp. 1100 (E.D.Pa.1976); *Miller v. American Telephone & Telegraph Co.,* 394 F.Supp. 58, 62–63 (E.D.Pa.1975), *aff'd mem.,* 530 F.2d 964 (3d Cir. 1976).

as the investors' agent. At those meetings, negotiations were conducted, the agreement of sale was signed, and the closing took place. These activities are imputed to the investors as a result of the agency relationship.

■ It is possible to consider the activities imputed to the investors as a "series of similar acts" to accomplish the object of acquiring the Hughes corporation, thus falling within § 8309(a)(1). To so hold would be contrary to the strict construction of the "doing business" provisions by the Pennsylvania courts, however. The Pennsylvania Supreme Court has stated that, "The statute contemplates a systematic course of conduct as contrasted with isolated or sporadic occurrences." *Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177, 185, 240 A.2d 505, 510 (1967).[11] *See also Stepnowski v. Avery*, 234 Pa.Super. 492, 340 A.2d 465 (1975). In this context, Judge Troutman has held that negotiation of a contract (as well as its subsequent nonperformance) "constitutes a single integrated transaction, rather than a 'series of similar acts'." *Rosen v. Solomon*, 374 F.Supp. 915, 918 n. 1 (E.D.Pa.1974), *aff'd mem.*, 523 F.2d 1051 (3d Cir. 1975). Accordingly, those of Boggs' Pennsylvania acts which are imputed to the investors do not meet the requirements of § 8309(a)(1) as that provision has been interpreted.

■ It seems that the stock purchase transaction also does not meet the requirements of § 8309(a)(2). The language of this provision is ambiguous. Plaintiff contends

that it only requires (1) the doing of a single act within Pennsylvania (2) for the purpose of either (a) realizing pecuniary benefit or (b) otherwise accomplishing an object with the intention of initiating a series of such acts. I interpret the final clause—"with the intention of initiating a series of such acts"—as imposing a separate third requirement, however.

The language of § 8309(a)(1) and (2) can be traced back to § 1011(C) of the Business Corporation Law of 1933,[12] the long-arm statute for foreign corporations, which provided:

"For the purposes of determining jurisdiction of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

Under this wording, it was clear that an intention to initiate a series of acts was essential to jurisdiction based upon a single act within Pennsylvania. The language of § 1011(C) was copied almost verbatim into § 4 of the Long-Arm Act of 1970,[13] which provided for service upon nonresident individuals.

Upon enactment of the Long-Arm Act of 1972, both of these statutes were replaced with a single chapter of Pennsylvania Con-

---

**11.** *Myers* was decided under § 1011(C) of the Business Corporation Law, one of the predecessors to § 8309. The language of § 8309(a)(1) and (2) is identical to that earlier statute in all material respects, and therefore *Myers* remains controlling precedent in interpreting that language. *Rosen v. Solomon*, 374 F.Supp. 915, 918 (E.D.Pa.1974), *aff'd mem.*, 523 F.2d 1051 (3d Cir. 1975); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1292–94 (E.D.Pa.1973); *see* text accompanying notes 12 – 15 *infra*. *See also Gorso v. Bell Equipment Corp.*, 476 F.2d 1216, 1221–22 (3d Cir. 1973). Of course, insofar as other provisions of § 8309 have liberalized the Business Corporation Law's "doing business" requirements, *Myers* is not controlling. *See Keene v. Multicore Solders, Ltd.*, 379 F.Supp.

1279, 1281–82 (E.D.Pa.1974) (discussing shipping of merchandise clause in § 8309(a)(3)); *Aamco, supra*, at 1293–94 & n. 17.

**12.** Act of May 5, 1933, P.L. 364, No. 106, § 1011, *as amended*, Act of July 20, 1968, P.L. 459, No. 216, § 54, 15 P.S. § 2011(C). For the history of this statute, *see* Comment, Pennsylvania's New Long-Arm Statute: Extended Jurisdiction over Foreign Corporations, 79 Dick.L. Rev. 51, 57–66 (1974). The pertinent language apparently was derived from Restatement of Conflict of Laws § 167, comment *a* (1934).

**13.** Act of July 1, 1970, P.L. 444, No. 152, § 4, 12 P.S. § 344. The only material difference in the language of the two acts was the substitution of the word "individual" for "corporation."

solidated Statutes.[14] Although the basis for jurisdiction over foreign corporations was extended beyond the narrow "doing business" test, *see* 42 Pa.C.S.A. § 8309(b), that test was retained as a basis for jurisdiction over individuals, *id.* §§ 8304, 8309(a). The above-quoted "series of similar acts . . or . . . single act" language was copied into § 8309(a) along with additional definitions.[15] Each definition was placed in a separate paragraph, and the above-quoted language became paragraphs (1) and (2). Since the clause dealing with a single act was now made a separate paragraph, the legislature apparently felt that it was necessary to delete the modifying phrase "for such purpose" and to instead spell out the specific purposes to which it referred. Except for this clarifying substitution, however, the language remained unchanged. There is no indication that by this substitution of words the legislature intended to alter the meaning of this passage.

I believe that "intention of initiating a series of such acts" remains a separate requirement for jurisdiction based upon a single act within Pennsylvania under § 8309(a)(2). This interpretation conforms to the Pennsylvania Supreme Court's emphasis in *Myers, supra,* on a "systematic course of conduct." *See Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.,* 526 F.2d 724, 728 (3d Cir. 1975); *Rosen, supra,* 374 F.Supp. at 918; *Aamco Automatic Transmissions, Inc. v. Tayloe,* 368 F.Supp. 1283, 1292–95 (E.D.Pa.1973). *Contra, Mackensworth v. American Trading Transportation Co.,* 367 F.Supp. 373, 375–76 (E.D. Pa.1973).

I assume that the first two requirements of § 8309(a)(2), act and purpose, have been met. Since there is no evidence that the investors intended to initiate a series of corporate acquisitions, however, the third requirement, future intention, has not been satisfied. As a result, it appears that service of process may not be based upon "doing business" within the meaning of § 8309(a)(2).

## B. DUE PROCESS OF LAW

Having concluded that the moving defendants are subject to service under the Pennsylvania Long-Arm Act, it must be determined whether exercise of jurisdiction over them will violate the Due Process Clause of the Fourteenth Amendment.

The due process test is whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The courts have looked to various factors in applying this test. A prerequisite is that the nonresident "purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968); *accord, Proctor & Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974), *allocatur denied* (Pa.) (unreported); *see Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The cause of action should arise out of defendant's activities within the forum. *Southern Machine, supra,* at 381; *Proctor & Schwartz, supra,* 228 Pa.Super. at 19, 323 A.2d at 15; *see Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27, 31–32 (8th Cir. 1973). Aside from these initial considerations, however, the question is whether the connection is "substantial enough" to make the exercise of jurisdiction over defendant reasonable. *Southern Machine, supra,* at 381; *Proctor & Schwartz, supra,* 228 Pa.Super. at 19, 323 A.2d at 15. The number of contacts is important. *Gardner Engineering, supra,* at

---

**14.** Act of November 15, 1972, P.L. 1063, No. 271, §§ 1 (*enacting* Long-Arm Act of 1972 as 42 Pa.C.S., ch. 83), 5(a)(7) (*repealing* Business Corporation Law § 1011), 5(a)(21) (*repealing* Long-Arm Act of 1970).

**15.** A derivation table accompanying the 1972 Act indicates that § 8309 was derived from "12 P.S. § 344", i. e., section 4 of the Long-Arm Act of 1970.

32. Of additional significance is the "quality" of the contacts, i. e., "the relative importance of the contact[s] to the whole transaction between the parties." *Id.* Reasonableness must be judged in light of the interest of the forum state in resolving the conflict at issue. *In-Flight Devices Corp. v. VanDusen Air, Inc.*, 466 F.2d 220, 232 (6th Cir. 1972); *Southern Machine, supra,* at 384–85; *Proctor & Schwartz, supra,* 228 Pa.Super. at 20–21, 323 A.2d at 16. Only a "rather low threshold of state interest" is required, however. *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724, 730 (3d Cir. 1975), *quoting Aldens, Inc. v. Packel*, 524 F.2d 38, 43 (3d Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

■ In the instant case, the investors voluntarily entered into the stock purchase contract in Pennsylvania. In so doing, they purposefully availed themselves of the privilege of acting here. *See M & N Meat Co. v. American Boneless Beef Corp.*, 380 F.Supp. 912, 915 (W.D.Pa.1974); *Proctor & Schwartz, supra,* 228 Pa.Super. at 19–20, 323 A.2d at 15. Plaintiff's cause of action arises out of the signing of this contract. Although the number of contacts which the investors had with the forum was minimal, the "quality" of those contacts was quite high, consisting of the final negotiations and contract consummation. *Cf. Gardner Engineering, supra,* at 32; *Thompson v. Ecological Science Corp.*, 421 F.2d 467, 469–70 (8th Cir. 1970). Pennsylvania's interest in having the action litigated here includes the interest in the affairs of one of its own corporations. There may also be an economic impact on Pennsylvania with respect to the state of employment of the corporation's personnel and decisions concerning the amount of Pennsylvania business the corporation will conduct. On the whole, I conclude that the investors' contacts with Pennsylvania were sufficient to allow them to be subjected to the personal jurisdiction

of this court without deprivation of due process.

The only connection which defendant Exchange Bank has with this forum is that it wired loan proceeds to a Pennsylvania bank for use in the stock purchase. That loan was negotiated and transacted in Florida. Plaintiff alleges that, in order to finalize the loan on lucrative terms, the bank conspired with the other defendants to carry out the purchase transaction and thereby became a principal in the alleged wrongful conduct, but there is no allegation of any factual basis for such a conspiracy. I assume that the bank acted purposefully in Pennsylvania when it wired the funds, but plaintiff's cause of action did not arise out of that act. The wiring of funds was the bank's only contact with Pennsylvania, and that contact was of relatively little importance to the entire stock purchase transaction. Presumably the investors could have made the loan proceeds available for the transaction in Pennsylvania in some other manner not directly involving the bank. For these reasons I conclude that the bank did not have sufficient contacts with Pennsylvania to subject it to this state's personal jurisdiction. *Cf. Empire Abrasive Equipment Co. v. H. H. Watson, Inc.*, Civil No. 76–1166 (E.D.Pa., Nov. 29, 1976).

Exchange Bank's motion to dismiss for lack of personal jurisdiction will therefore be granted. The investors' motion to dismiss will be denied.

## II. MOTION TO DISMISS BECAUSE OF IMPROPER VENUE

Six of the defendant investors—Phillips, Beasley, Carnes, Taylor, Schlein, and Moore—and Exchange Bank moved to dismiss because of improper venue, Fed.R. Civ.P. 12(b)(3). In addition, all defendants have argued that because venue was laid in the wrong district, the case should be transferred to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406(a).[16]

---

16. Section 1406(a) provides:

"The district court of a district in which is filed a case laying venue in the wrong divi-

sion or district shall dismiss, or if it be in the interest of justice, transfer such case to any

▮ Since this is a diversity action, venue is proper if this is the district "where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Neither all plaintiffs nor all defendants reside in this district. Whether this is the district "in which the claim arose" depends upon whether, in comparison with other possible forums, the most significant contacts underlying this cause of action took place here. *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 314–15 (S.D.N.Y.1975).[17]

▮ Many of the negotiations, the signing of the agreement of sale, and the closing of the stock purchase transaction took place in this district. During his negotiations, Boggs sent letters and made telephone calls to representatives of the Hughes estate from the Eastern District of Arkansas, and plaintiff's economic loss was registered in that district.[18] The investors agreed to participate in the stock purchase transaction and borrowed the funds to do so while in the Middle District of Florida.[19] Of these three possible forums, the Eastern District of Pennsylvania was the site of the most significant contacts since the operative events which gave rise to plaintiff's cause of action took place here. This is the district where the claim arose, and venue therefore is proper.

Defendants' motion to dismiss because venue is improper will be denied.

### III. MOTION FOR CHANGE OF VENUE

All of the defendants except Boggs[20] have moved to transfer this action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a), which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Although the record is not entirely clear on the matter, it appears that all of the defendants resided in the Middle District of Florida at the time this action was filed.[21] The defendants therefore were subject to service in that district and venue would have been proper under 28 U.S.C. § 1391(a). As a result, the action "might have been brought" in the Middle District of Florida. *See generally Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

▮ Whether transfer is appropriate for the "convenience of parties and witnesses" and "in the interest of justice" is a question of balance. In deference to the "paramount consideration" of plaintiff's choice of a proper forum, transfer may only be granted if the defendants establish that the

district or division in which it could have been brought."

17. It has been stated that in a diversity action the question of where a claim arose should be determined according to state choice-of-law rules. *See, e. g., Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968). *See also Ghazoul, supra*, at 315 n. 6. This result has been criticized. *See, e. g.*, 1 J. Moore, *Federal Practice* ¶ 0.142[5.–2] at 1429–30 (2d ed. 1976). The Pennsylvania choice-of-law rule is based upon a determination of which state has the most significant relationship with the cause of action. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); *cf.* Restatement (Second) of Conflict of Laws §§ 145 *et seq.* (1971). Since this rule is essentially the same as that adopted independently by federal courts in interpreting the venue statute, I need not decide whether this issue must be resolved under state or federal common law.

18. Plaintiff's headquarters is located in North Little Rock, Arkansas. I take judicial notice, Fed.R.Ev. 201, that North Little Rock is in Pulaski County, which is in the Eastern District of Arkansas. *See* 28 U.S.C. § 83(a).

19. The investors' activities took place in Haines City, Florida. I take judicial notice, Fed.R.Ev. 201, that Haines City is in Polk County, which is in the Middle District of Florida. *See* 28 U.S.C. § 89(b).

20. Boggs originally joined in this motion, but has since withdrawn.

21. After the stock transfer, Hughes did business in the Middle District of Florida, thereby becoming a resident for venue purposes. *See* 28 U.S.C. § 1391(c).

balance of interests is *strongly* in their favor. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Among the interests to be considered are the location of the corporate defendant's principal offices and the residence of the individual defendants, the residence of potential witnesses, the location of pertinent records and documents, and the location of the event giving rise to the suit. *Capital Equipment Leasing Corp. v. R. H. Macy & Co.*, Civil No. 76–1359, slip op. at 3 (E.D.Pa., Dec. 8, 1976); *Blender v. Sibley*, 396 F.Supp. 300, 302 (E.D.Pa.1975). *See also Clay v. Overseas Carriers Corp.*, 61 F.R.D. 325, 330 (E.D.Pa.1973).

■■■■ The principal offices of Hughes (and of Exchange Bank) and the residences of the investors are in the Middle District of Florida.[22] The investors are doctors and businessmen, and they have submitted affidavits averring that defending this action in Pennsylvania will subject them to great inconvenience. The doctors contend that their absence from Florida will result in a disruption of medical services in the areas in which they practice.

Defendants intend to call as witnesses two Florida attorneys who, they contend, also will be inconvenienced by a Pennsylvania trial. These witnesses are expected to testify about the advice and representation which they gave to the investors regarding the stock purchase.[23]

Plaintiff intends to call as witnesses members of the Hughes family, the attorney for the Hughes estate, and the person who introduced Boggs to W. W. Hughes. These witnesses are expected to testify about the Hughes' initial contacts and subsequent negotiations with plaintiff and Boggs and about the resulting transfer of the Hughes corporation. Since these are the primary facts upon which plaintiff's claim is based, the testimony of these witnesses is of major importance. All of these witnesses are Pennsylvania residents, and since the subpoena power only extends to the limits of the federal district and beyond that district for 100 miles from the place of trial (Fed.R.Civ.P. 45(e)(1)), plaintiff cannot compel them to testify in Florida.

Defendants contend that the pertinent records and documents are in Florida or at plaintiff's offices in Arkansas, but the record is not clear on this point. As discussed above, the most significant conduct giving rise to this suit occurred within the Eastern District of Pennsylvania. I do not consider either of these factors to be of major importance in this case, however. Records and documents can be photographically reproduced and mailed to this district. *Herbst v. Able*, 278 F.Supp. 664, 666–67 (S.D.N.Y.1967); *Clendenin v. United Fruit Co.*, 214 F.Supp. 137, 140 (E.D.Pa.1963). Most of the material facts can be proven by witnesses' testimony, and there is no need for the jury to examine the site of this incident. *Cf. Atlantic Richfield Co. v. Stearns-Roger, Inc.*, 379 F.Supp. 869, 872 (E.D.Pa.1974).

Assessing all of the remaining factors, I conclude that the balance does not tip so strongly in defendants' favor as to require transfer. The primary factor favoring transfer is that the Florida defendants and witnesses will be greatly inconvenienced by being forced to come to Pennsylvania for trial. An additional consideration is that defendant Exchange Bank will be subject to service of process in Florida whereas it is not subject to service in Pennsylvania. Although these factors are significant, they do not predominate.

The foremost factor militating against transfer, of course, is plaintiff's choice of this forum. *See Shutte, supra.* The other major factor is plaintiff's inability to com-

---

**22.** Although defendant Boggs resided in Florida when this action was commenced, he now lives in Arkansas.

**23.** Defendants also have intended to call Florida personnel of Exchange Bank for testimony regarding the bank loans, but, since the action is being dismissed as to the bank, that testimony may no longer be necessary if the case is tried in Pennsylvania.

pel its Pennsylvania witnesses to testify in Florida. A party should not be forced to rely on "trial by deposition" rather than live witnesses. *Blender, supra,* at 303; *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 756 (S.D.N.Y.1966). This is especially so when the "qualitative value" of the witnesses' testimony is high. *Glickenhaus v. Lytton Financial Corp.,* 205 F.Supp. 102, 106 (D.Del.1962). *See also Brown v. Woodring,* 174 F.Supp. 640, 647 (E.D.Pa.1959). Such is the case here, since, as noted above, plaintiff's witnesses will testify as to the central factual issues of plaintiff's case.[24] Plaintiff has asserted that compulsory process may be necessary to secure live testimony of these witnesses, and, therefore, trial should be conducted in a forum which affords plaintiff access to such process.[25]

Defendants will be inconvenienced by a Pennsylvania trial, but plaintiff will be inconvenienced if this case is transferred to Florida. Judge Weiner's comments in *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc.,* 358 F.Supp. 441, 446 (E.D.Pa.1973), are applicable here:

> "Transfer in this instance would merely shift the inconvenience from the defendant to the plaintiff. And where there is present an equitable standoff, or even in those situations where the argument for transfer is only slightly in favor of the movant, the plaintiff's choice of forum should not be disturbed."

The inconvenience which will be suffered by defendants and their witnesses disturbs me. If plaintiff's choice of forum were the only opposing consideration, I would order transfer to the Middle District of Florida. It is plaintiff's need for the Pennsylvania witnesses which tips the scales in favor of a Pennsylvania trial.

Defendants have failed to show that the balance of interests strongly favors transfer of this action, and, as a result, defendants' motion for a change of venue will be denied.

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

█ Defendant Hughes Refrigerated Express, Inc. has moved to dismiss the action against it for failure to state a claim upon which relief can be granted, Fed.R. Civ.P. 12(b)(6). Since affidavits, depositions, and other matters outside the pleadings have been presented, this motion will be treated as one for summary judgment under Federal Rule 56. *See* Fed.R.Civ.P. 12(b). Summary judgment will only be entered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Hughes corporation was formed to facilitate transfer of the ICC certificate from the Hughes estate to Boggs and the investors. In essence, by its motion the corporation argues that there is no claim

---

**24.** Defendants characterize the deposition testimony of plaintiff's witnesses as "*most favorable to the defendants* and completely unhelpful to plaintiff." Comments of Defendants, Other than Winston M. Boggs, on Plaintiff's Reply Brief, Document No. 96, at 6 (emphasis in original). They thus imply that this testimony is not essential to plaintiff's case. I am judging the importance of this testimony with regard to the subjects about which the witnesses will testify and the factual information the witnesses are expected to provide on those subjects. Whether the testimony helps or hurts plaintiff's cause is a factor for plaintiff to weigh in calling these witnesses, but it has no bearing on the importance of the testimony which the witnesses may present. Defendants' evaluation of the benefits plaintiff will derive from the testimony therefore is immaterial. If

I were to accord it significance, however, the fact that the witnesses' deposition testimony was not favorable to plaintiff would be an additional reason not to force plaintiff to rely on those depositions at trial.

**25.** Of course, defendants' Florida witnesses are beyond the reach of this court's subpoena power, but, despite their argument that the witnesses will be inconvenienced, defendants have never asserted that compulsory process is needed to secure the witnesses' testimony at a Pennsylvania trial. In any event, the testimony of plaintiff's witnesses is more important to adjudication of the central issues of this case than is that of the Florida attorneys, who were only involved in that aspect of the case involving the investors.

that it participated in the allegedly unlawful conduct of the other defendants; it was merely a tool through which the scheme was carried out.

Nevertheless, Hughes is now owned and managed by Boggs and the investors, who, in their capacity as shareholders and directors, have formally ratified their acquisition of Hughes and its ICC certificate. Hughes has thus been officially linked to this allegedly wrongful transaction. More important, Hughes, under the ownership and management of Boggs and the investors, continues to profit from the use of the ICC certificate. For these reasons, plaintiff has named Hughes as a defendant and demanded such relief as an accounting and relinquishment of all profits traceable to the certificate.[26]

Under these facts, I cannot say that plaintiff has failed to state a claim against Hughes upon which relief can be granted and that Hughes is therefore entitled to a judgment as a matter of law. Hughes relies upon *Gibson v. Cannon*, 325 F.Supp. 706 (E.D.Pa.1971), but, unlike the moving party in that case, Hughes is not an independently owned third party which played only an incidental role in the facts alleged. Instead, Hughes was intricately involved in the transaction at issue and remains the owner of the property whose takeover is in dispute.

Material facts remain to be determined in this case, and Hughes is not entitled to a judgment as a matter of law. Hughes' motion for summary judgment therefore will be denied.

---

**26.** *See generally* Fed.R.Civ.P. 20, which provides:

"All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A . . . defendant need not be interested in . . . defending against all the relief demanded."