**UNIDEX SYSTEMS CORPORATION,**
**Plaintiff,**

v.

**BUTZ ENGINEERING CORPORA-**
**TION and Republic Corporation,**
**Defendants.**

Civ. A. No. 937–72.

United States District Court,
District of Columbia.

Jan. 5, 1976.

Joseph T. Lilly, Washington, D. C., for plaintiff.

Alfred H. Moses, Covington & Burling, Richard L. Dashefsky, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

The court is called upon to determine whether the defendants are subject to the jurisdiction of the courts of the District of Columbia. Service of the summons and complaint was made on the defendants by mail outside the District of Columbia and they moved to dismiss the action on the grounds of insufficiency of service of process and lack of personal jurisdiction.

The manner of service for actions brought in the District of Columbia is prescribed in Section 13–431 of the District of Columbia Code which provides that where extraterritorial service is authorized, it may be made "by any form of mail addressed to the person to be served and requiring a signed receipt." § 13–431(a)(3). Service outside of the District is authorized in those cases where "the exercise of personal jurisdiction is authorized by this subchapter." § 13–424.

Plaintiff relies on a provision of the District of Columbia Long-Arm Statute (§ 13–423(a)(1)) as the basis for the exercise by the court of personal jurisdiction over defendants. That subsection provides:

"(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

"(1) transacting any business in the District of Columbia;"

Plaintiff, Unidex Systems Corporation ("Unidex"), alleges in its complaint that defendants Republic Corporation ("Republic") and Butz Engineering Corporation ("Butz Engineering") breached an oral agreement entered into with defendants on or about April 7, 1971 in the District of Columbia calling for services by plaintiff in connection with work to be performed by Butz Engineering for

the United States Postal Service. Defendants moved to dismiss the complaint on the ground that extraterritorial service against them was insufficient as they had neither entered into an oral agreement with plaintiff in the District of Columbia as alleged in the complaint, nor otherwise transacted business in the District giving rise to the claims asserted by plaintiff.

In support of their motion the defendants filed affidavits and the deposition of Jerome J. McGranaghan, president of Unidex. The plaintiff's opposition was supported by counter-affidavits. The court ordered an evidentiary hearing in the hope that it would aid in resolving the conflicts in the paper record. At the hearing no witnesses were called by the parties. The court thereupon granted defendant's motion, and plaintiff appealed. Our Circuit Court of Appeals remanded for the purpose of conducting an evidentiary hearing and the entry of an order reflecting findings of fact and conclusions of law. No such findings and conclusions had heretofore been entered by the court.

Unidex, a District of Columbia corporation, was a software engineering firm with offices located in the McLachlen Bank Building in Washington, D. C. A software firm basically prepares drawings, studies, analyses, etc., but does not have the capability to do fabrication and installation work which is described in the trade as "hardware". Plaintiff's only client at the time was the U.S. Postal Service.

The defendant Republic is a Delaware corporation with its principal place of business in Century City, California. Butz Engineering is a California corporation engaged primarily in the manufacture and sale of conveyor systems, and has its main business site in Azusa, California. All of the stock of Butz Engineering is owned by a wholly owned subsidiary of Republic. Defendants are not qualified to do business in the District of Columbia, carry on no business operations in the District, and have not designated an agency for service of process

here. They own no real or personal property here and are not listed in any local telephone directory.

On March 7, 1971 the Postal Service initiated a project to rehabilitate and equip the mail handling system for the Morgan Station postal facility in New York City. Both Unidex and Butz were interested in participating in this work, but neither company was initially included in the list of companies to which the Postal Service sent requests for proposals.

McGranaghan, an attorney, was doing legal work for Republic in the District of Columbia on a monthly retainer. He described his role as that of a "trouble shooter" in dealings with government agencies. This was independent of his role as president of Unidex. The Postal Service scheduled a briefing conference pertaining to the Morgan Station project for March 18, 1971 and a walk-through of the facility the next day. Clarence Butz, president of Butz Engineering, informed a group vice-president of Republic that he would not be able to attend the March 18th briefing but would be able to participate in the walk-through the next day. Thereupon Republic's president called McGranaghan and arranged for him to attend the briefing. McGranaghan was accompanied by Donald G. Lyons, a Unidex employee.

The next day Butz met Donald Lyons at the Morgan Station facility and participated in the walk-through with him. At the time some engineering problems were noted and discussed and both men made some notes relative thereto, and according to Lyons there was some general discussion about Unidex's qualifications for helping to get the contract. Lyons stated that he was trying to sell Unidex's abilities to Butz and that Butz appeared to be receptive.

The RFP required bidders to submit a written proposal by the close of business April 15, 1971, later extended to May 14th. The proposal was to be in two parts: a technical management proposal and a pricing proposal. The overall proposal was to cover the design of the sys-

tem (Phase I) and the fabrication and installation of the system (Phase II).

The next meeting between the parties occurred in the District of Columbia on March 31. Butz, two other employees of his firm, and a group vice-president of Republic flew to the District of Columbia on March 30th for a business meeting that evening to be followed the next morning by a scheduled meeting with representatives of the Postal Service. No one from Unidex was present at the Postal Service meeting which was concerned with the Morgan Station project.

Following the meeting at the Postal Service, Butz and his group met with McGranaghan and Paul G. Hendrickson, a business associate, for lunch. The parties are in agreement that two business matters were discussed at lunch, both initiated by McGranaghan. First, McGranaghan proposed that Republic acquire Unidex. This was rejected by Republic's vice-president, Mr. Lamberti., Second, McGrahaghan proposed that Unidex participate with Butz Engineering on the Morgan Station project. According to McGranaghan, he assumed that the defendants agreed to his proposal "because they didn't say anything". Butz and Leibrick, his director of engineering, contradict McGranaghan, asserting that his proposal was specifically rejected. At any rate, at Hendrickson's suggestion, Butz and two of his associates visited the Unidex offices. This was for the purpose of assessing Unidex's capabilities for participation in the Morgan Station project, and according to Butz himself, they spent several hours there touring the premises. The group finally left the Unidex offices and went to McGranaghan's office, some distance away at 17th and K Streets, N.W., where they had further discussion about the Unidex offices and about Unidex working on the Morgan Station proposal.

On April 7, 1971, Butz called Unidex and told Don Lyons to "Get out to California". Lyons did go to California and worked on the Morgan Station proposal. How much he contributed at that time is in dispute but nobody disputes the fact that he did some work. According to Butz they decided to use Unidex on or about May 9th or 10th of '71. The proposal was submitted and on June 1st, 1971, Butz and Lyons met with Postal Service officials here in the District of Columbia to review the proposal which they had submitted. Sometime thereafter Butz decided to drop Unidex from further participation.

## CONCLUSION

While the actual consummation of the alleged agreement is hotly contested in terms of when and where it occurred, it is clear that the defendants participated in some activities in the District of Columbia with the objective of securing a government contract. Also, defendants concede that they had some contacts and discussions with plaintiff here in the District of Columbia relative to plaintiff's role in the acquisition and performance of the Morgan Station job, but deny that they were specific or substantial negotiations. The question is whether these activities and discussions amount to "transacting any business in the District of Columbia".

The court believes that they do.

Our long-arm statute is comparable to that of many jurisdictions, inasmuch as it is patterned after the Uniform Act. In discussing the section here involved our Court of Appeals points out that:

"It should be noted that the 'transacting business' sections have generally been given broad interpretation, normally limited only by due process considerations, and meaningful guidelines have been established by the Supreme Court to determine in a commercial setting the limits of due process. See *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Uniform Act itself recognizes this, for the Commissioners' Note regarding section (a)(1), the 'transacting business'

902

section, states that '[t]his provision [(a)(1)] should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and has been given by the courts of that state.' 9B Uniform Laws Annot. at 310–11 (1966)." *Margoles v. Johns*, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973) at 1218 [Footnotes omitted]

Other courts have indicated their agreement with this assessment in applying the standard formulated by these Supreme Court cases, i. e., that a nonresident defendant against whom a judgment in personam is sought in the forum state be shown merely to have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Thus, in cases involving breach of contract, courts have held that though the actual consummation or final execution of a contract may not have occurred within the forum state, the test of "transacting any business" is satisfied by evidence of purposeful activities both preliminary and subsequent to the execution of the contract. *Longines-Wittnauer Co. v. Barnes and Reinecke*, 15 N.Y.2d 443, 261 N.E.2d 8, 209 N.E.2d 68, 24 A.L.R.3d 508; *National Gas Appliance Corp. v. AB Electrolux*, 270 F.2d 472 (7th Cir., 1959).

The court is of the opinion that (1) the March 31st discussion between plaintiff and defendants at the restaurant, (2) the lengthy inspection tour of Unidex's business site during which plaintiff's capabilities were discussed, (3) the subsequent conference at McGranaghan's office, and (4) the June 1, 1971 meeting of Butz and Lyons with Postal Service authorities cumulatively constitute such minimal contacts that the maintenance of this action does not offend traditional notions of fair play and substantial justice.

Accordingly, the defendants' motion is denied.