**BARON & COMPANY, INC.**

v.

**The BANK OF NEW JERSEY, as liquidating trustee of the Garden State Racing Association Liquidating Trust, and Garden State Racing Association.**

**Civ.A. No. 79–2314.**

United States District Court,
E. D. Pennsylvania.

Sept. 23, 1980.

Bruce L. Thall, Philadelphia, Pa., for plaintiff.

Steven Kudatzky, Haddonfield, N. J., for defendants.

## OPINION

LUONGO, District Judge.

This is an action for breach of contract. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a)(1). The action is before me on the defendant's motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2) or in the alternative to transfer to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). For the reasons hereafter stated, I conclude that this court lacks personal jurisdiction over the defendant, and the action should be transferred. *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964).

Plaintiff, Baron & Company, Inc. (Baron) is a Pennsylvania corporation which acts as a management consultant specializing in the acquisition, merger and financing of corporations and businesses. In addition, and most relevant to this action, Baron is in the business of acting as a finder of prospective buyers and sellers of businesses. The defendant, The Bank of New Jersey, is the liquidating trustee of the Garden State Racing Association Liquidating Trust (GSRALT), a trust created under New Jersey law. Defendant Garden State Racing Association was a New Jersey corporation whose assets consisted of the Garden State Park Race Track, and the Cherry Hill Lodge and Cherry Hill Inn hotel–restaurant facilities. On April 14, 1977, the Garden State Park Race Track was destroyed by fire. As a result, the directors of the Garden State Racing Association adopted a plan of liquidation, forming GSRALT on April 3, 1978, and named The Bank of New Jersey as the liquidating trustee. The Association was dissolved and its assets were poured into GSRALT, which then assumed all contingent liabilities of the Association. Since the Association was dissolved in April of 1978, I am concerned only with the conduct of the defendant bank as trustee since that time for the jurisdictional issue before me.

As of June 25, 1979, the date of the filing of the complaint, it is uncontested that GSRALT was not engaged in any business

which had been previously conducted by the Association. The Cherry Hill Lodge was sold by the Association sometime in 1977. The trustee sold the racetrack property in May of 1978, and The Cherry Hill Inn in November 1978, consequently none of the above mentioned properties were assets of the trust when the complaint was filed. Furthermore, as of the date this suit was initiated, the Association itself had been dissolved for over a year. It is undisputed that GSRALT neither owns nor controls any assets in the Commonwealth of Pennsylvania. Further, plaintiff has brought no facts to my attention that the trustee bank engages in direct business in Pennsylvania. The crux of plaintiff's jurisdictional assertion is that the defendant bank's conduct in relation to the contract which is the basis of the dispute between the parties, was sufficient to vest jurisdiction in this court. Accordingly, it is necessary to set forth the background of the contract and the pertinent facts concerning its performance. The record consists of pleadings, affidavits and depositions.

Sometime in 1976, plaintiff's president, Robert Baron,[1] learned that the bank was the administrator pendente lite of Eugene V. Mori, the founder and principal stockholder of the Garden State Racing Association. The primary asset of the estate was Mr. Mori's holdings in the Association. While it is not clear who initiated the negotiations, the Association and Mr. Baron began discussions concerning the employment of Baron & Company as a finder of purchasers of some of the Association's assets. On April 27, 1977, Baron & Company and the Association entered into an agreement whereby plaintiff would attempt to secure a willing and able buyer for the Cherry Hill Lodge and Cherry Hill Inn, for which, if successful, it was to receive a finder's fee.[2] This agreement was executed in New Jersey by the treasurer of the Association, Ms.

Janice Vondra. Subsequently, the Cherry Hill Lodge was sold independently of the efforts of plaintiff and is not involved in this dispute. Mr. Baron, however, found a group of buyers for the Cherry Hill Inn who, on November 20, 1978, signed an agreement of sale contingent on whether or not a sale to a group with no relation to Baron could and would be consummated. The sale to the other group was eventually consummated, but plaintiff, claiming that it is nevertheless entitled to its finder's fee, brought this action.

The record reveals that the sole contacts of the defendant Bank within this Commonwealth under this contract consist of telephone calls and correspondence with plaintiff. The contract which was assumed by The Bank as trustee, although containing a Pennsylvania choice of law provision, was executed in New Jersey, and concerned New Jersey property. Plaintiff contends that these contacts are sufficient to vest jurisdiction in this court. In addition, plaintiff contends that its own conduct in attempting to secure a buyer for the properties pursuant to the contract is also sufficient to allow this court to exercise personal jurisdiction over defendant.

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the court sits. The Pennsylvania Long–Arm Statute, 42 Pa.Con.Stat.Ann. § 5322 *et seq.* (Purdon Pamphlet 1980), allows a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Id.* § 5322(b). Thus, the reach of the Pennsylvania statute is coextensive with the due

---

1. Mr. Baron had previously done business with both The Bank of New Jersey and with Eugene V. Mori, the principal shareholder in the Garden State Racing Association. Baron Deposition Dec. 6, 1979, at 6–9.

2. The defendant has attacked plaintiff's right to collect the finder's fee, asserting that the plaintiff is prohibited from receiving such a fee since it is not a licensed real estate broker. Because of my disposition of the jurisdictional question, I do not deal with that problem of substantive law.

process clause of the United States Constitution. *Donner v. Tams–Witmark Music Library, Inc.,* 480 F.Supp. 1229, 1232 (E.D. Pa.1979). *See Rev–Mark, Inc. v. Summerfield G.M.C. Truck Co., Inc.,* —— Pa.Super. ——, 407 A.2d 443, 445 (1979) (interpreting the prior Pennsylvania Long–Arm Act).[3]

■■■ Under the due process clause a court may not exercise personal jurisdiction over a non–resident defendant unless there are certain minimum contacts between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980). Essentially, before hearing a case a court must ask whether "the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that State." *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1940) (emphasis added). In interpreting this standard the Supreme Court has determined that in order for a non–resident defendant to be subject to the jurisdiction of the court it must have purposefully availed itself of the privilege of acting within the forum state. *World–Wide Volkswagen Corp. v. Woodson, supra* at 295, 100 S.Ct. at 566, 2 L.Ed.2d 1283; *Hanson v. Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

■■■ The assertion that the defendant is subject to this court's jurisdction because the *plaintiff* conducted meetings, made phone calls and prepared documents in Pennsylvania in attempting to find a buyer for the New Jersey properties is without merit. As the Supreme Court stated in *Hanson v. Denkla, supra,* "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." 357 U.S. at 253, 78 S.Ct. at 1239.

The activity upon which plaintiff relies in this case is clearly unilateral activity. It was plaintiff's officer who made phone calls, conducted meetings, and prepared documents. There is no indication in the record that defendant participated in any way within this Commonwealth in any of the activities related to Baron & Company's attempt to find a buyer. The fact that the plaintiff's conduct was in pursuance of its agreement with defendant does not impute that conduct to the defendant for jurisdictional purposes. *See Pennsylvania Manufacturers' Association Insurance Company v. Township of Gloucester,* 493 F.Supp. 1047 (E.D.Pa. 1980). The voluntary choice by Baron & Company to conduct its business and perform its contract with defendants in Pennsylvania cannot serve to subject the defendant to the jurisdiction of this court unless the defendant has done something to manifest its affiliation with this forum. *Gagner v. Parsons & Whittemore, Inc.,* 450 F.Supp. 1093, 1096 (E.D.Pa.1978).

If plaintiff's contention rested entirely on its own conduct, clearly there would be no jurisdiction over defendant in this case. Plaintiff asserts further, however, that defendant's conduct in performing the contract, after it was named trustee in April of 1978, was such that it purposefully availed itself of the privilege of doing business in Pennsylvania.

**3.** Plaintiff states that jurisdiction is predicated on sections 5322(a)(2–4) of the Pennsylvania Long–Arm Statute which provides that a court has jurisdiction over a person who "acts . . . as to a cause of action . . . arising from such person: (2) Contracting to supply services or things in this Commonwealth. (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. Con.Stat.Ann. § 5322(a)(2–4) (Purdon Pamphlet 1980). However, due to the fact that I conclude *infra* that there are insufficient contacts to allow this court to exercise jurisdiction from a constitutional standpoint it is unnecessary to determine if the defendants' conduct meets any of the statutory criteria. 42 Pa.Con. Stat.Ann. § 5308 (Purdon Pamphlet 1980).

After careful analysis of the facts in support of this contention, I conclude that defendant's conduct is not of sufficient quality to subject defendant to the jurisdiction of this court. *See B. J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1101–02 (E.D. Pa.1977). In the first instance, plaintiff's claim that the choice of law provision "manifests Defendant's recognition of significant Pennsylvania contacts . . . ." (Response to Motion to Dismiss at 7, n. 4) is not at all persuasive. The mere presence of a choice of law provision in a contract is not sufficient to vest jurisdiction in a court. *McShan v. Omega Louis Brandt Et Frere*, 536 F.2d 516, 518 (2d Cir. 1976); *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257, 260 (10th Cir. 1977); *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 538, 588 (2d Cir. 1965). *Cf. Proctor & Schwartz v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11, 15 (1974) (choice of law provision viewed as a factor). Clearly, as one court aptly stated, "[l]egal principles designed for choice of law purposes . . . are not sufficient guides for measuring the power of a state to issue process beyond its borders." *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 382 (6th Cir. 1968).

In *Proctor & Schwartz v. Cleveland Lumber Co., supra*, the Pennsylvania Superior Court concluded that the fact that the defendant executed a contract which was to be governed by Pennsylvania law satisfied the purposeful availment test.[4] The court did not, however, hold that the mere presence of the choice of law clause was sufficient since it actually based its jurisdictional determination on the fact that the transaction in question had a realistic and foreseeable economic impact in the Commonwealth. *Id.* 323 A.2d at 15. This notion of foreseeability and minimum contacts was

discussed by the Supreme Court in *World–Wide Volkswagen, supra*, wherein the Court stated that the "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." 444 U.S. 286, 100 S.Ct. at 567.

I do not believe that the existence of the choice of law provision in the instant case, in light of this contract's significant connections with New Jersey, made it foreseeable that The Bank of New Jersey would be subjected to suit in Pennsylvania in an action arising out of this contract.

Finally, the plaintiff contends that the activity of the defendant in making phone calls, mailing checks and sending correspondence to the plaintiff manifests the defendant's availment of the forum. I disagree. I fail to see how making phone calls and mailing checks constitutes an invocation by defendant of the protection of Pennsylvania law. *Agrashell, Inc. v. Bernard Sirotta Company, supra*, at 587. While the record reflects that phone calls were made, they were not so "numerous, continuous, or of a substantial quality" as to justify my assumption of jurisdiction in this case. *See Gagner v. Parsons & Whittemore, Inc., supra*, at 1096. All of the essential events in the negotiation and formation of this contract took place in New Jersey. The contracts, although prepared in Pennsylvania by Baron, were executed at The Bank of New Jersey by Ms. Janice Vondra, the Association's Treasurer. The subject matter of the contract was in New Jersey. After liquidation of the Association, The Bank's only contacts with Pennsylvania were the phone calls and correspondence discussed

---

4. The *Proctor & Schwartz* court developed a three step analysis to determine whether or not sufficient contacts are present for the exercise of jurisdiction. The court stated:

   "First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. . . . Second, the cause of action must arise from defendant's activities within the forum state.

. . . Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable."

*Proctor & Schwartz, supra*, 323 A.2d at 15. Since I have determined that the defendant's conduct was not such to meet even the first step in the *Proctor & Schwartz* test it is not necessary to discuss whether the other two are satisfied.

above. There is no indication that the defendant, through these contacts, intended to invoke the protection of Pennsylvania law. Nor does it seem from the facts, in particular that this was a contract concerning New Jersey property, that the defendant contemplated or foresaw any realistic economic impact in Pennsylvania from this transaction, a factor considered controlling in *Proctor & Schwartz v. Cleveland Lumber, supra,* 323 A.2d at 15. *See Southern Machine Co. v. Mohasco Industries, Inc., supra,* at 383.

In support of its jurisdictional assertions, plaintiff relies heavily on *Follansbee Metals Co., Inc. v. John T. Clark & Sons of New Hampshire, Inc.,* 387 F.Supp. 574 (W.D.Pa. 1974). That case is clearly distinguishable from the case at bar. In *Follansbee,* while the court gave great weight to the fact that there was a continuous series of phone calls and correspondence between the parties, that factor was not deemed controlling. In that case the court was of the opinion that, since the contract was executed in Pennsylvania, and the subject matter of the contract was the stevedoring of a product of Pennsylvania, it was clear that the defendant availed itself of the forum. *Id.* at 581. By contrast, in the instant case the contract was clearly executed in New Jersey and concerned the sale of New Jersey property.

Similarly, plaintiff's reliance on my opinion in *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091 (E.D.Pa.1977) is misplaced. In *McAdams,* I held that non–resident investors in a trust whose agent breached a fiduciary duty to another corporation by diverting a corporate opportunity, were subject to the Pennsylvania Long–Arm Statute. *Id.* at 1102. In *McAdams,* however, I noted that the main reason that the investors were subject to this court's jurisdiction was that the quality of the agent's contacts was high in that the agent con-

ducted the final negotiations in Pennsylvania and the contract was executed in this Commonwealth. *Id.* In the instant case, the defendant has done no comparable acts which subjected it to the jurisdiction of this court.[5]

 Since the defendants have stipulated that all discovery conducted up until this date can be utilized in an action in New Jersey, I will, in the interest of justice, transfer· this case pursuant to 28 U.S.C. § 1404(a), as requested in the alternative by the defendant, rather than dismiss it. Despite the lack of personal jurisdiction I do have the power to transfer. *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964).

---

5. Plaintiff's reliance on *McGee v. International Life Insurance Co.,* 335 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) is also inapposite. In *McGee,* the Court held that a life insurance company was not denied due process even though the only contacts were that the defendant mailed a life insurance policy into the forum state and accepted premiums mailed back from the forum. *Id.* at 221, 78 S.Ct. at 200.

The reach of *McGee,* however, was severely limited by the Court in *Hanson.* The *Hanson* Court distinguished *McGee* on the ground that the forum state in *McGee* had enacted special legislation to protect its citizens from being injured in an "activity that the State treats as exceptional . . .." 357 U.S. 252, 78 S.Ct. 1239. Pennsylvania has no such manifest public policy to protect the plaintiff in this case.