The **WESTERN UNION TELEGRAPH COMPANY, Plaintiff,**

v.

**T. S. I., LTD., Defendant.**

**Civ. A. No. 82–389.**

United States District Court, D. New Jersey.

Aug. 6, 1982.

Carpenter, Bennett & Morrissey by Laurence Reich, Newark, N. J., and Wachtell, Lipton, Rosen & Katz by Theodore Gewertz, New York City, for plaintiff.

Walder, Sondak, Berkeley & Brogan by Thomas J. Spies, Newark, N. J., and Pray, Walker, Jackman, Williamson & Marlar by Floyd L. Walker, Tulsa, Okl., for defendant.

## OPINION

STERN, District Judge.

In this action brought pursuant to 28 U.S.C. § 1332, plaintiff Western Union Telegraph Company ("Western Union"), a New York corporation having its principal place of business in New Jersey, charges defendant T. S. I., Ltd. ("TSI"), an Oklahoma corporation with its principal place of business in Oklahoma, with breach of contract. Defendant TSI now moves pursuant to Fed. R.Civ.P. 12(b)(2) to dismiss the action for lack of *in personam* jurisdiction. The Court holds that it has *in personam* jurisdiction

over the defendant and that the motion must therefore be denied.[1]

## I. FACTS

This action arises out of three contracts between Western Union and TSI relating to TSI's option to purchase and purchase of transponders[2] on Western Union's Westar V and Westar VI communications satellites.[3] On March 12, 1981, James Ragan, a vice-president of Western Union, contacted George Milne, a vice-president and general manager of TSI, about the possible purchase by TSI of one or more transponders.[4] Ragan informed Milne that prior to the commencement of negotiations, Western Union required that TSI forward a letter of credit in the amount of $1.5 million to secure TSI's obligations in the proposed transactions. On March 26, 1981, TSI sent this letter of credit to Western Union's New Jersey offices.

On April 2, 1981, TSI's president, Gene Dennison, its chief financial advisor, Thomas Hermann, and Milne visited Western Union's offices in New Jersey to discuss the proposed purchase of transponders. A five-hour discussion ensued at which basic terms of the contract were discussed including the identity of the satellites on which the transponders were to be sold and the price of the transponders. Dennison subsequently

1. Three weeks after this suit was filed, TSI brought an action against Western Union in the United States District Court for the Western District of Oklahoma seeking specific performance of the contracts at issue here. *T. S. I., Ltd. v. Western Union Telegraph, Co.*, No. 82–C–260–E (W.D.Okla.). Western Union moved pursuant to 28 U.S.C. § 1404(a) to transfer that action to this court. Following this Court's decision from the bench on June 28, 1982 denying TSI's motion to dismiss for lack of *in personam* jurisdiction, TSI consented to the transfer of the Oklahoma action to New Jersey for consolidation with this action.

2. A transponder is a combination radio receiver and transmitter which receives a radio signal from a station on the ground and transmits it to other receiving stations on the ground.

3. TSI's only previous contact with Western Union, or with the State of New Jersey in general, came in early 1980, when it contracted with Western Union for the lease of a transponder

on Western Union's Westar III satellite. This transaction is not at issue in the present suit.

4. Although TSI maintains that the March 12, 1981 contact was a unilateral solicitation of TSI by Western Union, it is far from clear that this was the case given the prior dealings of the parties. In addition, TSI's statement that transponders such as those placed on Westar V and Westar VI are "extremely unique and expensive communication devices that are limited in number and are in great demand by users and prospective users...," Br. in Support of Defendant's Motion to Dismiss for Lack of *In Personam* Jurisdiction at 2, along with its statement on June 12, 1981 that it was "ready, willing and able to step in on short notice to execute the purchase of one or more additional transponders ...," see *infra* at 332, belies its insistence that it was a purely passive solicitee in the transactions rather than an active pursuer of the agreements. See *infra* at 336.

sent a mailgram to Western Union's New Jersey headquarters in which he expressed concern over the status of negotiations and urged that the parties meet again shortly to pursue the proposed agreements. On April 28, 1981, Dennison, Hermann, and Milne again traveled to New Jersey to discuss the matter. A two-and-one-half-hour discussion took place at which the terms of the option contracts were negotiated, including the number of transponders involved, the price, the payment schedule, and insurance arrangements.[5]

In late May 1981, representatives of the parties met in Oklahoma and agreed to an option contract which gave TSI an option to buy one transponder on Westar V and two transponders on Westar VI. The contract was executed in Oklahoma on May 28, 1981 and backdated to May 11, 1981. On May 29, 1981, TSI exercised its option to purchase the one Westar V transponder. The May 29 contract was executed in Delaware for tax purposes.

On June 12, 1981, Milne informed Western Union that TSI was amenable to buying any other transponders that Western Union was willing to sell. See *supra* note 4. As a result, meetings between the parties were held in Oklahoma on August 20 and 21 to discuss TSI's possible purchase of a second transponder on the Westar V satellite and an agreement was reached on September 25. On October 16, 1981, a second option agreement was executed in New Jersey, and on October 19, 1981, TSI exercised its option to buy the second Westar V transponder. The October 19 contract was executed in Delaware for tax purposes.

In November 1981, problems began to arise with the contracts because, according to TSI, TSI believed that the Federal Com-munications Commission might take some action regarding transponder sales to non-common carriers which, in turn, might preclude TSI from purchasing transponders. On December 30, 1981 and in January 1982, meetings were held between the parties in New Jersey to try to resolve the problems.

On February 9, 1982, Western Union filed this action, alleging that TSI has failed to make payments required by the May 11 contract for options to purchase two Westar VI transponders, by the May 29 contract for the purchase of one Westar V transponder, and by the October 19 contract for the purchase of a second Westar V transponder. Western Union seeks damages in excess of $14,600,000 plus interest.[6]

## II. DISCUSSION

■ Fed.R.Civ.P. 4(e) permits a federal district court to exercise personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state where the court sits. N.J.R. 4:4–4(c)(1) (1982), by which service was effected on TSI, permits service on nonresident defendants "to the uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). Thus, New Jersey's long-arm statute is coextensive with the Due Process Clause of the Constitution. *De James v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981) (interpreting New Jersey long-arm rule); *see also Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1058 (3d Cir. 1982) (when state statute contains language providing that jurisdiction extends to the limits of the Constitution, the Third Circuit has

---

5. TSI does not directly contradict Western Union's assertion that substantial negotiations took place during the two April meetings, but instead argues that the initial purpose of the meetings was merely to inquire into the progress of the negotiations, that no written proposal was made at either meeting, and that no final agreements were reached at either meeting. Such conflicts as do exist, however, must be resolved in plaintiff's favor for purposes of determining whether plaintiff has estab-lished a *prima facie* case for the existence of *in personam* jurisdiction. *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *Data Disc, Inc. v. Systems Technology Assoc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

6. The October 16, 1981 contract for an option to purchase a second Westar V transponder is not a subject of this lawsuit.

pretermitted examining the precise statutory language and has focused on the due process requirement instead). The issue for the Court in this case, therefore, is whether defendant TSI may be required to defend this suit in New Jersey consistent with the concepts of fundamental fairness, reasonableness, and justice mandated by the Due Process Clause. *Reilly v. P. J. Wolff & Sohne*, 374 F.Supp. 775, 777 (D.N.J.1974).

## A. Precedential Framework

Cases prior to 1945 had not reformulated the constitutional limits of *in personam* jurisdiction in response to the nation's industrial growth. 4 C. Wright & A. Miller, Federal Practice & Procedure § 1064. By the mid-twentieth century, with the advent of high speed transportation and communications, many commercial transactions touched two or more states and involved parties separated by the full continent. Modern transportation and communication had made it much less burdensome for a business to defend a suit in a state where it had transacted economic activity. *See McGee v. International Life Insurance Company*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957). Just as the courts had expanded their conception of the scope of interstate commerce to encompass the ever-widening streams of commerce and to accommodate the flood of economic and industrial development, *see Swift & Co. v. United States*, 196 U.S. 375, 398, 25 S.Ct. 276, 280, 49 L.Ed. 518 (1905) (Holmes, J., opinion of the Court) ("commerce among the States is not a technical legal conception, but a practical one, drawn from the course of business"), so the Supreme Court responded to the realities of economic activity by replacing the doctrine of personal presence within a territorial jurisdiction as enunciated in *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877) with the more flexible, modern standard set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *International Shoe*, the Court stated that if a defendant is not physically present within the jurisdiction of a state, he must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (citations omitted). The *International Shoe* Court noted that presence is not in doubt when a corporation's activities have been "continuous and systematic." Conversely, the "casual presence" of a corporate agent in the forum, or single or isolated activities within a forum on a corporation's behalf, were held to be insufficient to subject the corporation to suit on a cause of action unrelated to activities within the state. *Id.* at 317, 66 S.Ct. at 158.

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court dealt with the question of *in personam* jurisdiction over a nonresident corporation with contacts arising out of a single transaction with the forum state. In *McGee*, a Texas insurance company, which had insured a California resident but had no other contacts with California, was held amenable to a suit in California arising from the insurance contract, which the Court found to have a "substantial connection" with that State. *Id.* at 223, 78 S.Ct. at 201. In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), however, decided shortly after *McGee* during the same term, the Supreme Court announced certain limits to the scope of *in personam* jurisdiction:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State .... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State....

*Id.* at 253, 78 S.Ct. at 1239. The Court has also indicated that a defendant must reasonably be able to anticipate being "haled" before the court of a particular forum in order to be amenable to suit within that jurisdiction. *Kulko v. California Superior Court*, 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

These restrictions were underscored in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), a products liability action in which *in personam* jurisdiction of an Oklahoma court over New York corporate defendants was denied because the defendants' only contact with the forum was the fortuitous circumstance that an automobile, sold by defendants in New York to a New York resident, happened to be involved in an accident while traveling through Oklahoma. The Supreme Court found "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction" such as the closing of sales, the performance of services, the solicitation of business, or the desire to serve the forum state market. *Id.* at 295, 100 S.Ct. at 566. Although *World-Wide Volkswagen* involved a tort action, the Third Circuit has recently applied its analysis to a case sounding in contract. *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982).

▬ In sum, the history of *in personam* jurisdiction from *International Shoe* through *World-Wide Volkswagen* indicates that personal jurisdiction may be maintained over a corporation in any of three basic ways. First, a corporation may be subject to the jurisdiction of a forum because it is actually present there. Second, a corporation may be deemed pervasively or generally present within a forum because of ongoing business activities within the forum in the manner of the defendant in *International Shoe*. Such a corporation is amenable to suit in the forum on any transaction, whether or not it arises from forum-related activities. Finally, as in *McGee*, a nonresident corporation may be subject to the jurisdiction of a forum because it has contacts with the forum arising out of the transaction which is the subject of the suit. In this last situation, where the claim arises from forum-related activities, the court must determine whether there are sufficient contacts with the forum arising from the transaction at issue to justify the assertion of jurisdiction over the out-of-state defendant. *See Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d at 588.[7]

## B. Analysis

The instant case presents the situation addressed in *McGee*: Western Union asserts that the Court has jurisdiction over TSI as a result of activities of TSI in New Jersey relating to the contracts which are the subject of the suit. Thus, we must decide whether, with respect to these contracts, TSI has purposefully availed itself of the privilege of conducting activities within New Jersey, and, if so, whether TSI's purposeful contacts with the state have been

---

**7.** *World-Wide Volkswagen* recognized that the minimum contacts requirement performs two related functions: "protect[ing] the defendant against the burdens of litigating in a distant or inconvenient forum [and acting] to ensure that the states, through their Courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in the federal system." 444 U.S. at 292, 100 S.Ct. at 564. This statement reflects two requirements for the existence of *in personam* jurisdiction distinct from the existence of minimum contacts. First, there must be contacts between the *transaction* at issue and the forum state, as opposed to contacts between the defendant and the forum state, sufficient to warrant the forum state's assertion of jurisdiction over the controversy. *Empire Abrasive Equipment v. H. H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir. 1977), citing *Jonnet v. Dollar Savings Bank of New York*, 530 F.2d 1123, 1140 (3d Cir. 1976) (Gibbons, J., concurring). Second, the burdens on the defendant of litigating in the forum must not be such so as to constitute coercion or fundamental unfairness by the plaintiff. *Id.* Both requirements are clearly met here. New Jersey's interest in affording its resident corporations a means of resolving their commercial disputes is sufficient to warrant the use of its courts for the adjudication of this controversy. *Alchemie International, Inc. v. Metal World, Inc.*, 523 F.Supp. 1039, 1046 (D.N.J.1981). Similarly, given the size of TSI, the size of the contracts at issue here, the visits that TSI has already made to the forum and the prevalence and availability of jet-age travel, we find no inconvenience to defendant that amounts to a denial of due process. *McGee v. International Life Insurance Co.*, 355 U.S. at 224, 78 S.Ct. at 201. Any serious burdens to TSI of litigating here could have been dealt with in the context of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

substantial enough to justify the exercise of *in personam* jurisdiction.

■ The facts of the case before the Court establish a strong basis for a determination that the exercise of jurisdiction over TSI is reasonable and fair. It is clear that TSI has performed purposeful acts in New Jersey with respect to the contracts that are the subject of this litigation; three of its top officers journeyed to the state on two occasions and entered into substantial negotiations leading to the execution of the contracts, and defendant made numerous telephone and mail contacts with the state with respect to the contracts.[8] Thus, this case is quite unlike *World-Wide Volkswagen* and *Hanson v. Denckla*, in which defendants had only fortuitous, rather than purposeful, contacts with the forum state. The visits and communications in the instant case indicate bilateral, rather than unilateral, contact by the parties with New Jersey.

As to the sufficiency of TSI's purposeful contacts with New Jersey, we find that TSI's conduct in New Jersey of substantial negotiations toward the formation of the contracts, coupled with its telephone and mail communications fully supports jurisdiction over a nonresident defendant. The cases of *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) and *Wisconsin Electrical Mfg. Co. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980), demonstrate the importance of the negotiating visits. In *Lakeside*, a nonresident defendant ordered goods from a Wisconsin company, knowing that the goods were likely to be manufactured in Wisconsin and shipped from there. Defendant communicated with the Wisconsin plaintiff by mail and telephone during negotiation and performance of the contract. There were no visits by defendant to Wisconsin either to negotiate or for other reasons. The Seventh Circuit refused to uphold a finding of *in personam* jurisdiction.[9] In *Pennant Products*, decided the following year and authored by the same judge, *Lakeside* was distinguished. In *Pennant Products*, there were two visits to the forum, one for the purpose of negotiation and the other for the purpose of resolving misunderstandings stemming from the contract. The *Pennant Products* Court determined that through those visits the defendant had purposefully availed itself of the privilege of conducting activities within the forum state and that these activities supported the exercise of *in personam* jurisdiction. *Id.* at 677–78.

The importance of visits to the forum state to negotiate a contract underlying the suit has been recognized by many other courts as well. *See Stop-A-Flat Corp. v. Electra-Start of Michigan, Inc.*, 507 F.Supp. 647, 651 (E.D.Pa.1981) (*in personam* jurisdiction over corporate defendant found "based on the undisputed fact that the president of Electra-Start visited Pennsylvania at least once for the express purpose of negotiating the contract which is at dispute in this action"); *M.L. Byers, Inc. v. HRG Productions, Inc.*, 492 F.Supp. 827 (S.D.N.Y. 1980) (fact that officials of defendant corporation spent three days negotiating in the forum state constituted purposeful activities which significantly advanced the making of the contract at issue even though

---

8. The Court declines to consider the two visits by TSI's officers in December 1981 and January 1982 to resolve the problems arising from the contracts as relevant to determining TSI's contacts with New Jersey with respect to the contracts at issue here. *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1302 n.2 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *contra, Wisconsin Electrical Mfg. Co. v. Pennant Products, Inc.*, 619 F.2d 676, 678 (7th Cir. 1980); *Unidex Systems Corp. v. Butz Engineering Corp.*, 406 F.Supp. 899, 902 (D.D.C.1976).

9. As noted in the dissent to the denial of *certiorari* in the *Lakeside* case, cases in several other circuits have indicated that they would find *in personam* jurisdiction on the facts of the *Lakeside* case. *See e.g., Pedi-Bares, Inc. v. P & C. Food Markets, Inc.*, 567 F.2d 933 (10th Cir. 1977); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972); *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365 (8th Cir. 1969).

agreement was not reached in the forum; *in personam* jurisdiction found); *Unidex Systems Corp. v. Butz Engineering Corp.*, 406 F.Supp. 899 (D.D.C.1976) (discussions and meetings conducted in the forum state with reference to an oral contract constituted sufficient minimal contacts; *in personam* jurisdiction found); *Moser v. Boatman*, 392 F.Supp. 270, 274 (S.D.N.Y.1975) (*in personam* jurisdiction found on the basis of two brief meetings in the forum State at which agreement on a number of the essential terms of the contract was reached, although contract was executed elsewhere). *Cf. Lehigh Valley Industries, Inc. v. Birnbaum*, 527 F.2d 87 (2d Cir. 1975) (*in personam* jurisdiction may be founded on substantial negotiations within the forum state leading to the execution of a contract despite the fact that the contract was executed and called for performance outside of the forum; negotiations involving the mere adding of names and addresses of employees and employers held insufficiently substantial to support *in personam* jurisdiction); *Infomed v. Healthcare of Louisville*, 526 F.Supp. 1287, 1289 (D.N.J.1981) (the fact that two of defendant's employees travelled to New Jersey on one occasion to inspect plaintiff's facilities constituted "an isolated incident" which did not advance the business interest of defendant; *in personam* jurisdiction not found).

■ TSI's telephone and mail contacts with Western in New Jersey which, like the visits, were intended to further negotiation of the contracts at issue here, are also important in the context of the significant undertaking which these contracts entailed. As Judge Lacey of this district recently stated, "I see little to distinguish a corporation's using the telephone and mail to solicit and negotiate a contract from that same corporation sending an agent into the state in pursuit of the identical contract from the identical buyer." *Alchemie International, Inc. v. Metal World, Inc.*, 523 F.Supp. at

1050. We follow *Alchemie* in holding that in the context of a substantial commercial contract, telephone and mail contacts with a forum state are jurisdictionally significant. *Id.*[10] *Cf. Baron & Co. v. Bank of New Jersey*, 497 F.Supp. 534, 538 (E.D.Pa.1980) (telephone and mail communications alone, at least where not substantial, insufficient to found *in personam* jurisdiction).

■ TSI places great weight on its assertion that Western Union unilaterally solicited its business by making the initial contact which led to the formation of the contracts with Western Union that are now the subject of this suit. We have noted earlier that there is substantial doubt as to whether TSI can be deemed a purely passive solicitee here. *See supra* note 4. Assuming *arguendo*, however, that TSI can be so viewed, solicitation by a plaintiff, while relevant, cannot be construed as the decisive factor in determining the existence of minimum contacts. *See Pedi-Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 937 (10th Cir. 1977) (initial contact is not decisive). As stated in *Hunt v. Mobil Oil Corp.*, 410 F.Supp. 4, 8 (S.D.N.Y.1975), *aff'd*, 550 F.2d 68 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977):

> The motive that brought [defendants to the forum state] is irrelevant to the issue of jurisdiction. It is what they did that is relevant. The hard fact is that ... [the corporate defendant's] representatives and agents were here on matters of vital interest to its welfare and they performed acts in furtherance of its business interest.

■ It is not, therefore, the initial contact which is determinative but the weight of the combined contacts and whether those contacts are sufficient to comport with the notions of fundamental fairness established by *International Shoe* and its progeny.

**10.** TSI's contention that *Alchemie* stands for the proposition that mail and telephone contacts must be in support of solicitation in order to be jurisdictionally significant is incorrect. The only possible limitation that the *Alchemie*

court placed on its holding concerns the substantiality of the commercial transaction involved. *Id.* Mail and telephone contacts with the forum were considered as a separate factor from solicitation. *Id.* at 1051–52.

### III. CONCLUSION

Defendant TSI sought to advance its business interests by actively pursuing the purchase of transponders with Western Union and by entering into three multi-million dollar contracts with Western Union. TSI sent three of its high-level officers to New Jersey on two separate occasions to negotiate the transponder contracts and was in regular communication with Western Union for approximately seven months prior to the execution of the last of the three contracts. Given the quality and quantity of the contacts of TSI with the forum, it is entirely reasonable that TSI would have anticipated being haled into a court in New Jersey and it is fundamentally fair that it be required to defend itself here in connection with its alleged breach of the three contracts in dispute. Accordingly, defendant's motion to dismiss this case for lack of *in personam* jurisdiction is denied.